IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RCA LABORATORY SERVICES, LLC,
*d/b/a* GENETWORx,

        Plaintiff,

      v.

CEDARHURST SENIOR LIVING, LLC,

        Defendant.

                          Civil Action No. 3:24cv736

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant Cedarhurst Senior Living, LLC's ("Cedarhurst") Motion to Dismiss Amended Complaint (the "Motion to Dismiss" or "Motion").[1] (ECF No. 9.) Plaintiff RCA Laboratory Services, LLC ("RCA") responded in opposition to the Motion, (ECF No. 12), and Cedarhurst replied, (ECF No. 13).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons articulated below, the Court will deny Cedarhurst's Motion to Dismiss. (ECF No. 9.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I.  Factual and Procedural Background

RCA Laboratory Services brings this five-count action against Cedarhurst Senior Living for breach of contract, breach of the implied covenant of good faith and fair dealing, Action on Account, and, in the alternative, for *quantum meruit* and unjust enrichment.  (ECF No. 7, at 5–11.)

### A.    Factual Allegations[2]

In June 2020, Defendant Cedarhurst contracted with Plaintiff RCA for Covid-19 testing services for "samples . . . collected by [Cedarhurst] at [its] facilities."  (ECF No. 7 ¶ 13.)  This agreement (the "Laboratory Services Agreement" or "LSA") specified that RCA would bill patients' healthcare plans, or, for non-insured patients, the federal fund that was in place at the time, for laboratory services.  (ECF No. 7 ¶ 13; ECF No. 7-1, at 2 § 4.)

The LSA provides that "[f]or any self-pay testing the fee will be - Covid 19 - $65."  (ECF No. 7 ¶ 14; ECF No. 7-1, at 2 § 4.)  RCA provided Covid-19 laboratory services to Cedarhurst, and "has not been reimbursed by either patient insurance or the federal fund" for those services. (ECF No. 7 ¶ 17.)

### 1.   The Laboratory Services Agreement Between RCA and Cedarhurst

RCA is a Delaware limited liability company that specializes in "genetic, pharmacogenomics, and pathogen testing, including Molecular Diagnostic Testing Services" ("MDT services") for Covid-19 detection.  (ECF No. 7 ¶¶ 1, 10.)  RCA "operates some of its

---

[2] In considering the Motion to Dismiss, (ECF No. 9), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to RCA.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  To the extent the Complaint's allegations conflict with the content of an exhibit, "the exhibit prevails."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991)).

business," including the sale of Covid-19 tests, under the d/b/a alias "GENETWORx." (ECF No. 7 ¶ 2.) Cedarhurst is a limited liability company that operates senior and assisted living communities in Missouri. (ECF No. 7 ¶¶ 3–4.) In June 2020, Cedarhurst signed the LSA in which RCA agreed to provide Covid-19-related lab services to Cedarhurst and Cedarhurst agreed "to collect specimens from [their] patients and submit [them] to GENETWORx for Lab Services." (ECF No. 7-1, at 2 §§ 1–2; ECF No. 7 ¶ 13.)

Section four of the LSA, entitled "Fees," provides: "Genetworx will directly bill [a] patient's federal and state healthcare program or Commercial/Private Payers for Lab Services and will bill non-insured patients to the federal program currently in place. For any self-pay testing the fee will be Covid-19 $65." (ECF No. 7-1, at 2 § 4.) The LSA does not expressly state which, if either, of the parties are responsible for paying self-pay fees. (*See* ECF No. 7-1, at 2 § 4.)

The contract also contains a provision, entitled "Warranty," which states in part: "[t]he liability and obligations of Provider [Cedarhurst], and the remedies of GENETWORx, under or in connection with this Agreement shall be limited to repeating such Lab Services performed, at the sole option of GENETWORx, **or refunding the fees to Provider** in full or in part paid with respect to such Lab Services." (ECF No. 7-1, at 3 § 5(F) (emphasis added).)

Finally, the LSA provides that the document "constitutes the entire agreement between the parties for the provision of Lab Services by GENETWORx." (ECF No. 7-1, at 4 § 5(G).)

## 2. Services Provided by RCA and Subsequent Lack of Payment to RCA

Consistent with the terms of the LSA, RCA "provided [Covid]-19 MDT Services to [Cedarhurst]." (ECF No. 7 ¶ 17.) During the course of their working relationship, RCA sent Cedarhurst invoices for testing services performed. (ECF No. 7 ¶ 43; *see generally*, ECF No.

7-2.) RCA has not received renumeration for its services from either "patient insurance or the federal fund for testing services." (ECF No. 7 ¶ 17.) RCA states that the unreimbursed cost of its services amounts to $3,720,590.00. (ECF No. 7 ¶ 17.)

On August 14, 2024, RCA sent Cedarhurst a demand letter "requesting payment for the [Covid-19] MDT Services performed for" Cedarhurst. (ECF No. 7-3; ECF No. 7 ¶ 23.) Since that time, RCA "has received no payment or promise of payment from" Cedarhurst. (ECF No. 7 ¶ 24.)

### B.    Procedural Background

On September 24, 2024, RCA filed its Complaint against Cedarhurst in the Circuit Court for Henrico County, Virginia. (ECF No. 1-1, at 2–3; ECF No. 1, at 1.) On October 21, 2024, Cedarhurst filed a Notice of Removal on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[3] (ECF No. 1, at 1.) On October 28, 2024, Cedarhurst filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5.) On November 8, 2024, RCA filed an Amended Complaint. (ECF No. 7.)

In the Amended Complaint, RCA asserts five causes of action against Cedarhurst:

**Count I:**    **Breach of Contract – LSA:**  Cedarhurst failed to pay RCA "for the MDT Services provided" in violation of their contract.

**Count II:**    **Breach of Contract – Implied Covenant of Good Faith and Fair Dealing:**  Cedarhurst "abuse[d] . . . the rolling nature of its relationship with [RCA] by which it received MDT Services . . . in exchange for no

---

[3] 28 U.S.C. § 1332 provides, in pertinent part:

**(a)**  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

**(1)**  citizens of different States[.]

28 U.S.C. § 1332(a)(1).

4

compensation," and thereby exercised "bad-faith relative to its obligations under the [contract]," in violation of the covenant of good faith and fair dealing.

**Count III:**   **Action on Account:**  Cedarhurst "never objected to the accuracy" of invoices sent by RCA "for work performed," and thereby impliedly admitted the existence of a stated account between them, but still "failed to make payment on those amounts contained in the Invoices."  Therefore, Cedarhurst is liable to RCA for the amounts stated in the invoices.

**Count IV:**   ***Quantum Meruit* (asserted in the alternative):**  Cedarhurst "requested and received [MDT] services from" RCA; Cedarhurst "benefitted from" those services; and Cedarhurst "has not compensated [RCA]" for those services.  Therefore, Cedarhurst is liable to RCA under the doctrine of *quantum meruit*.

**Count V:**   **Unjust Enrichment (asserted in the alternative):**  Cedarhurst "requested and received [MDT] services from" RCA; Cedarhurst "benefitted from" those services; and Cedarhurst "has not compensated [RCA]" for those services.  Therefore, Cedarhurst has been unjustly enriched, and is required "to pay to Plaintiff the consideration owed for the MDT Services" under the doctrine of unjust enrichment.

(ECF No. 7 ¶¶ 29–30, 38, 42–47, 54–56, 58, 64–67.)

On November 20, 2024, Cedarhurst timely filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 9.)  RCA responded, (ECF No. 12), and Cedarhurst replied, (ECF No. 13).

For the reasons articulated below, the Court will deny the Motion.

## II.  Standard of Review

### A.    Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts

for the complaint to be "plausible on its face" and "raise a right to relief above the speculative

level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)." *Twombly*, 550 U.S. at 555, 570 (citations omitted).

### III. Analysis

Defendants seek relief on five grounds: (1) RCA fails to state a claim for breach of

contract; (2) the implied covenant of good faith and fair dealing cannot levy duties on Cedarhurst

that do not exist under the contract; (3) RCA fails to state a claim for Action on Account; (4)

RCA fails to state an alternative claim for *quantum meruit*; and (5) RCA fails to state an

alternative claim for unjust enrichment. (ECF No. 10, at 8–15.)

Accepting RCA's factual allegations as true and drawing all reasonable inferences in its

favor, as the Court must do at the motion to dismiss stage, RCA plausibly states all of its claims.

The Court will deny the Motion to Dismiss. (ECF No. 9.)

### A.    RCA States a Claim for Breach of Contract (Count I)

To state a claim for breach of contract, a plaintiff must show that there is "more than a

sheer possibility" that a defendant breached its legally enforceable obligation to the plaintiff and

that the plaintiff was injured because of that breach. *See Iqbal*, 556 U.S. at 678; *Shuler v.

Partner JD*, No. 3:15cv70 (HEH), 2015 WL 5020898, at *4 (E.D. Va. Aug. 20, 2015) (quoting

*Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004)). Because the LSA's provisions relating to

payment for RCA's Covid-19 testing services are subject to multiple reasonable interpretations,

RCA's breach of contract claim must survive Cedarhurst's Motion to Dismiss. *See James River

Ins. Co. v. Doswell Truck Stop, LLC*, 827 S.E.2d 374, 376 (Va. 2019).

7

### 1.    Legal Standard:  Breach of Contract

In Virginia, the three elements of a breach of contract claim are:  "(1) a legally

enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that

obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Shuler*,

2015 WL 5020898, at *4 (quoting *Filak*, 594 S.E.2d at 619).  When analyzing a contract, courts

should "consider [it] as a whole and . . . not place emphasis on isolated terms." *Quadros &*

*Assocs., P.C. v. City of Hampton*, 597 S.E.2d 90, 93 (Va. 2004) (citing *Am. Spirit Ins. Co. v.*

*Owens*, 541 S.E.2d 553, 555 (Va. 2001) and *Lansdowne Dev. Co. v. Xerox Realty Corp.*, 514

S.E.2d 157, 161 (Va. 1999)).

"When a contract is clear and unambiguous, it is the court's duty to interpret [it] as

written." *Palmer & Palmer Co. v. Waterfront Marine Constr., Inc.*, 662 S.E.2d 77, 80 (Va.

2008) (citing *Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 194 (Va. 1984)).  To determine

whether a contract term is ambiguous, a court must look to the context of the whole contract.

*James River Ins. Co.*, 827 S.E.2d at 376 (citing *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788

S.E.2d 237 (Va. 2016)).  Phrased differently, "a contractual term is not ambiguous merely

because it is subject to multiple interpretations when viewed in isolation.  Rather, a contractual

term is ambiguous when it is subject to multiple interpretations in view of the entire contractual

context." *James River Ins. Co.*, 827 S.E.2d at 376.  Opposing understandings of a contractual

term "reveal an ambiguity only where they are reasonable. . . .  A reasonable or fairly claimed

interpretation is one of two competing interpretations that are equally possible given the text and

context of the disputed provision." *Id.* (quotation marks and citation omitted).

Ultimately, "[t]he guiding light in the construction of a contract is the intention of the

parties as expressed by them in the words they have used, and courts are bound to say that the

parties intended what the written instrument plainly declares." *Palmer & Palmer*, 662 S.E.2d at

80 (citing *W.F. Magann Corp. v. Virginia–Carolina Elec. Works, Inc.*, 123 S.E.2d 377, 381 (Va.

1962)).

**2.      RCA Provides Sufficient Facts to State a Claim for Breach of Contract in Count I**

In its Motion to Dismiss, Cedarhurst contends that "[w]hen read as a whole, the LSA is

clear and unambiguous." (ECF No. 10, at 9.)  It is not.  Although the LSA provides for RCA to

furnish Covid-19 testing services to Cedarhurst, its text is far from clear regarding whether

Cedarhurst itself is responsible for the cost of those testing services when coverage from

"patient's federal and state healthcare program[s]" or "the federal program" is unavailable.  (*See*

ECF No. 7-1, at 2 § 4.)  The single sentence potentially referring to such an obligation reads:

"For any self-pay testing the fee will be Covid-19 $65."  While that standalone sentence might

be viewed as unambiguous in isolation, its ambiguity emerges in context.  The only other

reference in the contract to the exchange of funds between the two parties is found under the

subheading "Warranty," and reads:

> The liability and obligations of Provider [Cedarhurst], and the remedies of
> GENETWORx, under or in connection with this Agreement shall be limited to
> repeating such Lab Services performed, at the sole option of GENETWORx, or
> refunding the fees to Provider in full or in part paid with respect to such Lab
> Services.  In no event shall GENETWORx be responsible for any punitive
> damages or any consequential, incidental, indirect, or special damages (including
> lost profits or revenue) of Provider.

(ECF No. 7-1, at 3–4 § 5(F).)  RCA argues that the LSA would not reference a "refund" of lab

service fees to Cedarhurst if there existed no obligation for Cedarhurst to pay RCA in the first

instance.  (*See* ECF No. 7 ¶ 15; ECF No. 12, at 4.)  Cedarhurst counters that the cited section is

not a refund provision but a warranty provision providing for a damages cap, and that even under

RCA's reading of the provision, "there is no reason Cedarhurst could not be the beneficiary of a

9

fee refund even if it was not the initial payor of those fees." (ECF No. 13, at 5.)

Both interpretations are plausible in the absence of additional contractual provisions illustrating exactly who is responsible for the cost of RCA's testing services. The Motion to Dismiss notes that the LSA "lacks any terms defining the efforts [RCA] must undertake to first bill Cedarhurst's patients' insurance or government programs . . . . any terms explaining how [RCA] would bill or invoice Cedarhurst . . . . any terms explaining how Cedarhurst was to pay [RCA] [and in what timeframe] . . . . [and] any terms defining interest or fees" if Cedarhurst failed to pay RCA. (ECF No. 10, at 9–10.) Cedarhurst correctly observes that the LSA conspicuously lacks those additional provisions. Still, the lack of those provisions does not—especially when read favorably to RCA—preclude a reasonable inference that, under the LSA, Cedarhurst might pay for uninsured, or non-federally funded, services.

To survive the motion to dismiss stage, a plaintiff must establish only "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because, when viewed in the context of the full contract, the provision for a "self-pay testing" fee remains subject to multiple opposing but reasonable interpretations—in other words, because it is ambiguous—RCA has established "more than a sheer possibility" that Cedarhurst's failure to remit payment to RCA for the testing services provided was a breach of the contract. The Court cannot dismiss Count I.

**B.    RCA States a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)**

Because the Court does not dismiss RCA's breach of contract claim, the Court must also consider RCA's claim for breach of the implied covenant of good faith and fair dealing. *See Frank Brunckhorst Co. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 465 (E.D. Va. 2008). Here, RCA plausibly alleges that Cedarhurst failed to pay RCA for over 3.5 million dollars' worth of testing services. Therefore, this claim survives Cedarhurst's Motion to Dismiss.

**1.    Legal Standard:  Implied Covenant of Good Faith and Fair Dealing**

Under Virginia law, to establish a breach of the implied covenant of good faith and fair dealing, there must be "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013) (citing *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)). The covenant of good faith and fair dealing can be breached in two ways: "(1) where a party has a clear contract right, even if its exercise would arguably be arbitrary, that party is only forbidden from acting dishonestly . . . (2) but where a party has discretion in performance, that party cannot act arbitrarily or unfairly." *Stoney Glen*, 944 F. Supp. 2d at 466 (citing *Charles E. Brauer Co. v. NationsBank of Virginia*, 466 S.E.2d 382, 386 (Va. 1996), *Enomoto*, 624 F. Supp. 2d at 450, and *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 156 F.3d 535, 542 (4th Cir. 1998)).

Although every commercial contract impliedly contains the covenant of good faith and fair dealing, the breach of that covenant "gives rise only to a cause of action for breach of contract," rather than giving rise to a separate claim. *Charles E. Brauer Co.*, 466 S.E.2d at 385 (citing *Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank*, 848 S.W.2d 232, 239 (Tex. App. 1992)). As such, if a breach of contract claim fails under Fed. R. Civ. P. 12(b)(6), a related claim for breach of the covenant of good faith and fair dealing must also fail. *Frank Brunckhorst Co.*, 542

11

F. Supp. 2d at 465 (citing *Va. Vermiculite*, 156 F.3d at 542).

### 2.    RCA Provides Sufficient Facts to State a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing in Count II

Because the Court does not dismiss RCA's breach of contract claim, the Court must also consider RCA's claim for breach of the implied covenant of good faith and fair dealing. *See Frank Brunckhorst Co.,* 542 F. Supp. 2d at 465 (citing *Va. Vermiculite*, 156 F.3d at 542). RCA plausibly alleges that Cedarhurst failed to pay it for 3.5 million dollars' worth of testing services. This constitutes a breach of the implied covenant of good faith and fair dealing.

The first requirement of a breach of the implied covenant of good faith and fair dealing— that there be a contractual relationship between the parties—has been plausibly alleged. The LSA, an agreement between RCA and Cedarhurst that created enforceable obligations between the two parties, is a contract. RCA has also plausibly alleged that Cedarhurst breached the implied covenant of this contract. As explained above, the implied covenant of good faith and fair dealing is breached where either (1) a party with a clear contract right acts dishonestly, or (2) a party that can act with discretion in the performance of its contract obligations acts arbitrarily or unfairly. *Stoney Glen*, 944 F. Supp. 2d at 466 (citing *Charles E. Brauer Co.* 466 S.E.2d 382; *Enomoto*, 624 F. Supp. 2d at 450; and *Va. Vermiculite*, 156 F.3d at 542).

Because Cedarhurst's obligations under the contract to pay for the testing services provided by RCA are not explicitly laid out in the contract, dismissing Plaintiff's claim for breach of the implied covenant of good faith and fair dealing would be premature at this stage. It is enough that RCA plausibly alleges that Cedarhurst is obligated under the LSA to pay RCA for its services. Although the contract contains no information pertaining to whether Cedarhurst could act with discretion in any aspect of the remittance of that payment, a refusal by Cedarhurst to pay RSA for its services, if contractually obligated to do so, would be patently unfair.

Because RCA plausibly alleges that Cedarhurst was obligated by the LSA to pay for the Covid-19 testing services not covered by patient insurance or the federal fund, the Court cannot dismiss Count II.

### C.    RCA States a Claim for Action on Account (Count III)

To succeed in an Action on Account claim, a plaintiff must show that the party to whom the account is rendered for payment has admitted its correctness. *CMA CGM S.A. v. Cap Barbell, Inc.*, No. 2:18-CV-215 (LRL), 2018 WL 5091627, at *3 (E.D. Va. Sept. 17, 2018) (quoting *Robertson v. Wright*, 58 Va. (17 Gratt.) 534, 541 (1867)). A party can admit the correctness of an account either explicitly or impliedly. *Quadriga Art, Inc. v. L. Enf't All. of Am.*, No. 2005-4340, 2005 WL 3789232, at *2 (Va. Cir. Ct. 2005). A party impliedly admits the correctness of an account when they "retain[], for a long time," the account without objection. *Id.* Because RCA plausibly alleges that Cedarhurst retained RCA's invoices for at least two years and seven months without objection, the Court cannot dismiss Count III.

### 1.    Legal Standard:  Action on Account

"[A]n [A]ction on [A]ccount claim is substantially the same as any other contractual action." *Elite Plastic Surgery, LLC v. Huey*, No. 1:18cv409 (TCB), 2018 WL 3616015, at *3 (E.D. Va. July 2, 2018). For an Action on Account claim to succeed, the party bringing the action "'must show that there was an offer, acceptance, and consideration between the parties, as well as the correctness of the account and reasonableness of the charges.'" *Id.* (quoting 1 Am. Jur. 2d *Accounts and Accounting* § 7.)

In other words, "[t]he mere rendering of an account by one party to another[] is not sufficient to make it an account stated." *CMA CGM S.A.*, 2018 WL 5091627, at *3 (quoting *Robertson*, 58 Va. (17 Gratt.) at 541). Instead, there must be "some 'evidence to show that the

13

party who is sought to be charged has, by [their] language or conduct, admitted the correctness of the account.'" *CMA CGM S.A.*, 2018 WL 5091627, at *3 (quoting *Robertson*, 58 Va. (17 Gratt.) at 541.)

However, an account need not be expressly stated for an Action on Account to succeed. *See Quadriga Art*, 2005 WL 3789232, at *2. An account can also be stated "via an implied admission where a party retains 'for a long time, without objection, the account of the other party . . . showing a balance against him [or her].'" *Id.* (quoting *Watson v. Lyle's Adm'r*, 31 Va. (4 Leigh) 236, 249 (1833)); *see also Alpine Const. Co. v. McChesney Const. Co.*, No. A-1189, 1980 WL 143167, at *1 (Va. Cir. Ct. Nov. 25, 1980) (citing 1 Am. Jur. 2d *Accounts & Accounting* § 30 (1962) and 1A Michie's Jur. *Accounts & Accounting* § 4 (Repl. Vol. 1980)) (noting that an account can become impliedly stated when the party against whom the account is rendered retains it without objection for a "reasonable" amount of time.).

What amounts to a "reasonable" or "long time" in which a party must object to an account before it becomes impliedly stated "depends on the particular factors of each case." 1 Am. Jur. 2d *Accounts and Accounting* § 38 (2025). However, "an unexplained acquiescence for more than a year in the correctness of an account rendered raises a presumption that the account is correct." 1A Michie's Jur. *Accounts & Accounting* § 4 (2024).

### 2. RCA Provides Sufficient Facts to State a Claim for Action on Account in Count III

RCA states a claim for Action on Account. The parties signed a contract under which RCA agreed to provide Cedarhurst with Covid-19 testing services with the understanding that it would be paid for its services by patients' insurance providers, the federal program, or, for "self-pay" testing, in the form of sixty-five dollars per test. (*See* ECF No. 7-1, at 2 § 4.) Cedarhurst argues that the terms contained in the LSA established no account. (ECF No. 10, at 12–13.)

Cedarhurst's contention overlooks a clear tenant of Action on Account claims: an account can be impliedly stated if the party to whom the account is furnished retains the account "for a long time" without objecting to it. *See Quadriga Art*, 2005 WL 3789232, at *2 (quoting *Watson,* 31 Va. (4 Leigh) at 249).

RCA sent Cedarhurst invoices for RCA's testing services. (ECF No. 7 ¶ 20.) Those invoices are dated as early as April 2022. (ECF No. 7-2.) RCA's Amended Complaint, filed on November 8, 2024, states that Cedarhurst "never objected to the accuracy of the . . . [i]nvoices for work performed." (ECF No. 7 ¶ 44.) Therefore, read favorably, Cedarhurst retained at least some of RCA's invoices for at least two years and seven months, (until the filing of the Amended Complaint), without objection. Non-objection to a received account for two years and seven months is a sufficiently "long time" for an account to become impliedly stated. *Compare Lanfall Consulting, L.L.C. v. Va. State Univ.*, No. CL13–2685, 2015 WL 11123350, at *15 (Va. Cir. 2015) (dismissing claim for Action on Account where less than four months elapsed between the date of first invoice and defendant's objection to payment) *with Musical Electronics, Ltd. v. U.S. Elecs., Inc.,* 904 N.Y.S.2d 389, 390 (1st Dep't 2010) (retention of a debit note for over fifteen months without objection sufficient to create an account stated). Because Cedarhurst retained RCA's invoices for a reasonably long time without objection, RCA plausibly alleges that a stated account exists between them. The Court cannot dismiss Count III.

### D.    RCA States a Claim in the Alternative for *Quantum Meruit* (Count IV)

"[U]nder Virginia and federal law, a plaintiff is permitted to plead equitable theories of relief such as unjust enrichment and *quantum meruit* as alternatives to contract recovery." *Mendoza v. Cederquist*, No. 1:09CV163 (LMB), 2009 WL 1254669, at *3 (E.D. Va. May 6,

2009) (citing *Ford v. Torres*, No. 1:08cv1153 (JCC), 2009 WL 537563, at *4 (E.D. Va. Mar. 3, 2009)).

Under Virginia law, to succeed on a *quantum meruit* claim, plaintiffs "must show that (i) [they] rendered valuable services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant." *Raymond*, 961 F.2d at 491 (citing *Humphreys Railways, Inc.*, 603 F.Supp. at 98). *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Cap. Corp.*, 961 F.2d 489, 491 (4th Cir. 1992) (citing *Humphreys Railways, Inc. v. F/V Nils S.*, 603 F.Supp. 95, 98 (E.D. Va. 1984)). An express contract governing the dispute cannot exist. *Butts v. Weltman, Weinberg, & Reis Co.*, No. 1:13cv 1026 (JCC), 2013 WL 6039040, at *3 (E.D. Va. Nov. 14, 2013) (citing *Vollmar v. CSX Transp., Inc.*, 705 F.Supp. 1154, 1176 (E.D. Va. 1989)).

Here, Cedarhurst plausibly alleges that it (1) requested Covid-19 testing services from RCA, (2) RCA performed those services, (3) Cedarhurst was reasonably notified that RCA expected to be paid for those services, and (4) there is no express contractual provision between the parties governing whether Cedarhurst is itself liable for paying for those services. (*See* ECF No. 7 ¶ 54–56.) As a result, RCA states a claim in the alternative for recovery under the doctrine of *quantum meruit* in Count IV. *Raymond*, 961 F.2d at 491.

### 1.   Legal Standard: *Quantum Meruit*

"*Quantum meruit* (translated: 'as much as deserved') is an equitable doctrine premised on the notion that one who benefits from the labor of another should not be unjustly enriched." *Raymond*, 961 F.2d at 490–91 (emphasis added) (citing *Kern v. Freed Co.*, 299 S.E.2d 363, 363–64 (Va. 1983)). Under Virginia law, to succeed on a *quantum meruit* claim, a plaintiff "must

16

show that (i) [they] rendered valuable services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant." *Raymond*, 961 F.2d at 491 (citing *Humphreys Railways, Inc.*, 603 F.Supp. at 98).

Recovery under the doctrine of *quantum meruit* is based on a contract implied "in fact" by "the conduct of the parties." *Seagram v. David's Towing & Recovery, Inc.*, 62 F. Supp. 3d 467, 477 (E.D. Va. 2014) (citing *Hendrickson v. Meredith*, 170 S.E. 602, 602 (Va. 1933)). "A condition precedent to the assertion of a [claim for *quantum meruit*] is that no express contract exists between the parties," because "[p]arties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms." *Butts*, 2013 WL 6039040, at *3 ((internal quotation marks and citation omitted).

For a claim under the doctrine of *quantum meruit* to stand, one party must have requested the services of another. *T. Musgrove Constr. Co. v. Young*, 840 S.E.2d 337, 341 (Va. 2020) (citing *Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009)). "When the defendant has not requested the plaintiff's services, a plaintiff's claim is for unjust enrichment," not *quantum meruit. T. Musgrove Constr. Co.*, 840 S.E.2d at 341 (citing Candace Kovacic-Fleischer, *Quantum Meruit and the Restatement (Third) of Restitution and Unjust Enrichment*, 27 Review of Litigation 127, 132–33). Where a defendant does request the plaintiff's services, "*quantum meruit* is available when [for example] (1) the parties contract for work to be done, but the parties did not agree on a price, (2) the compensation mentioned is too indefinite, (3) there is a misunderstanding as to the price to be paid, or, (4) in some instances, the contract is void and of no effect." *T. Musgrove Constr. Co.*, 840 S.E.2d at 341 (citing *Marine Dev. Corp. v. Rodak*, 300 S.E.2d 763, 765 (Va. 1983)).

17

2.      **RCA Provides Sufficient Facts to State a Claim in the Alternative for**
        _**Quantum Meruit**_ **in Count IV**

RCA plausibly alleges in the alternative a _quantum meruit_ theory of recovery.  RCA rendered valuable services to Cedarhurst in the form of Covid-19 testing services.  (_See_ ECF No. 7 ¶ 54.)  Those services "were requested and received" by Cedarhurst.  (ECF No. 7 ¶ 54.) Throughout their professional relationship, RCA sent Cedarhurst invoices for completed testing services.  (ECF No. 7 ¶ 43; ECF No. 7-2.)  These were circumstances under which Cedarhurst was reasonably put on notice that RCA expected to be paid for its services—if not from patient insurance or the federal fund, then from Cedarhurst itself.

Cedarhurst contends that "[t]here is an enforceable, express contract governing the same subject matter as that which is alleged in [RCA's] claim for _quantum meruit_," which precludes RCA from recovering on a _quantum meruit_ theory.  (ECF No. 10, at 14.)  However, recovery under the doctrine of _quantum meruit_ is only precluded where "an express contract governs the scope of the benefits claimed."  _Fitzsimmons v. Cardiology Assocs. of Fredericksburg, Ltd._, No. 3:15CV72 (MHL), 2015 WL 4937461, at *4 (E.D. Va. Aug. 18, 2015) (citing _Ford_, 2009 WL 537563, at *4) (emphasis added).  As explained above, the LSA is ambiguous, particularly regarding whether Cedarhurst is obligated to pay the "self-pay" testing fee of sixty-five dollars per test in the absence of coverage from patient insurance or the federal program.  The Supreme Court of Virginia has held that "_quantum meruit_ is available when . . . the compensation mentioned [in a contract] is too indefinite . . .[or] there is a misunderstanding as to the price to be paid."  _T. Musgrove Constr. Co._, 840 S.E.2d at 341 (citing _Marine Dev. Corp._, 300 S.E.2d at 765).  At the very least, RCA brings this action due to "a misunderstanding as to the price to be paid" in its contract with Cedarhurst for Covid-19 testing services.  _Id._

18

Because Cedarhurst requested and accepted RCA's services, because Cedarhurst was reasonably notified that RCA expected Cedarhurst to pay for those services, and because no express contract provision exists between the parties clarifying who will be responsible for the cost of those services if they are not billed to patients' healthcare or to the federal fund, RCA alleges sufficient facts to state a claim in the alternative for *quantum meruit*. The Court cannot dismiss Count IV.

### E.     RCA States a Claim in the Alternative for Unjust Enrichment (Count V)

To recover on a theory of unjust enrichment, a plaintiff must prove that he or she conferred a benefit on the defendant that the defendant accepted or retained. *Integrated Direct Mktg., LLC v. Drew May and Merkle, Inc.*, 129 F.Supp.3d 336, 374 (E.D. Va. 2015) (citations omitted). As with *quantum meruit* recovery, an express contract precludes a claim for unjust enrichment. *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 647 (Va. 2020) (citing *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183 (Va. 2018)).

Here, because RCA conferred a benefit on Cedarhurst, because Cedarhurst accepted that benefit, and because the LSA does not expressly state whether Cedarhurst is responsible for paying for that benefit, Plaintiff plausibly states a claim in the alternative for unjust enrichment.

### 1.     Legal Standard:  Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Integrated Direct Mktg.*, 129 F.Supp.3d at 374 (citations omitted). Federal and Virginia law

permit a plaintiff to plead unjust enrichment as an alternative to contract recovery. *Mendoza*, 2009 WL 1254669, at *3 (citing *Ford*, 2009 WL 537563, at *4).

Unlike *quantum meruit* recovery, which is based on a contract implied in fact, "[t]he doctrine of unjust enrichment effects a 'contract implied in law' requiring one who accepts and receives goods, services, or money from another to make reasonable compensation for those services." *James G. Davis Constr. Corp.*, 841 S.E.2d at 647 (citing *Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 495 S.E.2d 478 (Va. 1998)); *see Seagram*, 62 F. Supp. 3d at 477 (E.D. Va. 2014) (citing *Hendrickson*, 170 S.E. 602 (Va. 1933)).

As with *quantum meruit* recovery, "[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *James G. Davis Constr. Corp*, 841 S.E.2d at 647 (citing *CGI Fed. Inc.*, 814 S.E.2d 183); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c, at 17 (Am. L. Inst. 2011) ("[T]he terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach.").

However, the mere existence of a contract by itself does not always preclude a claim for unjust enrichment. "For example, unjust enrichment is not precluded where 'a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations.'" *James G. Davis Constr. Corp.* 841 S.E.2d at 648 (Va. 2020) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c., at 17 (Am. L. Inst. 2011)). Where a claim for unjust enrichment "falls outside of the

plain terms of [an] agreement," the existence of that agreement does not impede the claim. *James G. Davis Constr. Corp.* 841 S.E.2d at 648 (Va. 2020).

### 2. RCA Provides Sufficient Facts to State a Claim in the Alternative for Unjust Enrichment in Count V

In the alternative, RCA plausibly states a claim for unjust enrichment. RCA conferred Covid-19 testing services on Cedarhurst, who knew of and accepted those services. (ECF No. 7 ¶¶ 64–65.) RCA plausibly alleges that it has not been compensated for the over 3.5 million dollars' worth of testing services it performed for Cedarhurst. (ECF No. 7 ¶¶ 66, 68.)

Cedarhurst contends that the existence of the LSA precludes a claim for unjust enrichment. (ECF No. 10, at 15.) However, as when seeking recovery under *quantum meruit*, a contract that insufficiently addresses the parties' obligations does not obviate a claim for unjust enrichment. *James G. Davis Constr. Corp.* 841 S.E.2d at 648 (Va. 2020) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c, at 17 (Am. L. Inst. 2011)). Here, the LSA, which is ambiguous about whether Cedarhurst is liable for covering the costs of RCA's services in the absence of coverage from patient insurance or the federal fund, is "ineffective to regulate the parties' obligations." *See id.*

Because Cedarhurst knew of and accepted RCA's Covid-19 testing services, because RCA has not been compensated for those services, and because the LSA does not sufficiently address whether Cedarhurst is responsible for paying for those services, Plaintiff plausibly states a claim for unjust enrichment. The Court cannot dismiss Count V.

## V.  Conclusion

For the reasons articulated above, the Court will deny the Motion.  (ECF No. 9.)

An appropriate Order shall issue.

Date: 6/2/25

Richmond, Virginia

M. Hannah Lauck
United States District Judge